# 23-10690

# United States Court of Appeals

*for the*

# Eleventh Circuit

———————◆———————

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

– v. –

RAFAEL SEGUNDO CASTRO DIAZ,

*Defendant/Appellant.*

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO: 1:17-cr-20887-KMM-5
(Hon. K. Michael Moore)

## INITIAL BRIEF OF APPELLANT

MARTIN A. FEIGENBAUM
P.O. Box 545960
Surfside, Florida 33154
(305) 323-4595

VINCENT LEVY
BRIAN T. GOLDMAN
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, New York 10017
(646) 837-837-5151

*Counsel for Defendant/Appellant Diaz*

THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT (CIP)

Pursuant to Eleventh Circuit Rule 26.1, counsel for Defendant-Appellant hereby certifies that no publicly traded company or corporation has an interest in the outcome of this appeal, and that the following persons may have an interest in the outcome of this appeal:

1.     Carlos Julio Tobon Bernal

2.     Juan Diego Restrepo Cadavid

3.     Ana M. Davide, Esq.

4.     Santiago Alirio Gomez Rivera

5.     Andres Felipe Daza, Esq.

6.     Yesid Avila Diaz

7.     Martin A. Feigenbaum, Esq., Attorney for Defendant-Appellant

8.     Rafael Segundo Castro Diaz (Defendant-Appellant)

9.     Brian T. Goldman, Esq., Attorney for Defendant-Appellant

10.    Vincent Levy, Esq., Attorney for Defendant-Appellant

11.    The Honorable Chris McAliley (United States Magistrate Judge).

12.    The Honorable Kevin Michael Moore (United States District Judge).

13.    Markenzy Lapointe

14.    Paul Domenic Petruzzi, Esq.

15. Samuel Joseph Rabin, Esq.

16. Lisa Tobin Rubio

17. Carlos Enrique Cuadros Sayas

18. Yvonne Rodriguez-Schack

19. Michele Vigilance

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Eleventh Circuit Rule 28-1(c), Defendant-Appellant requests oral argument. This appeal raises the question of the proper application of this Court's decision in *United States v. Ratcliff*, 245 F.3d 1246 (11th Cir. 2001), including what legal test district courts should apply in cases implicating *Ratcliff*. This Court has not yet had occasion to specify what that test should be.

Further, oral argument would be particularly useful in addressing any factual questions the Court has, and would also be useful in addressing distinctions, if any, between this case and certain of this Court's other cases, including *United States v. Edwards*, 777 F.2d 644 (11th Cir. 1985) and *United States v. Italiano*, 894 F.2d 1280 (11th Cir. 1990).

## STATEMENT OF APPEAL PREFERENCE

This appeal is entitled to preference because it is a criminal case in which Defendant-Appellant Rafael Segundo Castro Diaz has been convicted and is serving a term of imprisonment of seventy months in the Federal Bureau of Prisons.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ................................................ i

STATEMENT OF APPEAL PREFERENCE ......................................... ii

TABLE OF AUTHORITIES ...........................................................v

STATEMENT OF JURISDICTION.....................................................1

STATEMENT OF THE ISSUE ..........................................................2

STATEMENT OF THE CASE...........................................................3

   I.   Factual Background .........................................................3

      A.  The *Manatee* Is Loaded With Cocaine
And Seized, And An Indictment Is Issued..............................3

      B.  The Government Files A Series
Of New Indictments In The Instant Case ..............................5

   II.  Procedural History .........................................................6

      A.  The Court Denies Castro Diaz's Motion To Dismiss The SSI...............6

      B.  The Government Stipulates To
Castro Diaz's Conduct And He Is Found Guilty ....................9

      C.  Castro Diaz Is Sentenced And Appeals .................................11

STANDARD OF REVIEW ..............................................................12

SUMMARY OF ARGUMENT ..........................................................12

ARGUMENT ...............................................................................15

   I.   The District Court Had To Analyze
Whether The SSI Broadened Or Substantially Amended The FSI ..............15

      A.  *Edwards*, *Italiano*, and *Ratcliff*............................................15

iii

B.  The District Court Erred In Its
Application Of *Edwards*, *Italiano*, And *Ratcliff* ....................................20

II.  In Any Event, The SSI Was Plainly Untimely .............................................22

A.  Non-Overt-Act Conspiracies Require Proof That
The Conspiracy Continued Into The Limitations Period......................22

B.  The Stipulated Facts Show Castro Diaz's Involvement In
The Conspiracy Ended More Than Five Years Before The SSI ...........23

C.  The District Court Clearly Erred ...........................................................28

III.  The Court Should Reverse, Or At A Minimum, Remand ............................29

CONCLUSION .....................................................................................................30

CERTIFICATE OF COMPLIANCE......................................................................32

CERTIFICATE OF SERVICE ..............................................................................33

# TABLE OF AUTHORITIES

**Cases**      **Page(s)**

*Already, LLC v. Nike, Inc.*,
     568 U.S. 85 (2013) ............................................................................ 29

*Bonner v. City of Prichard*,
     661 F.2d 1206 (11th Cir. 1981) ........................................................ 26

*Grunewald v. United States*,
     353 U.S. 391 (1957) ......................................................................... 25

*Toussie v. United States*,
     397 U.S. 112 (1970) ......................................................................... 16

*United States v. Barnes*,
     586 F.2d 1052 (5th Cir. 1978) .......................................................... 26

*United States v. Butler*,
     792 F.2d 1528 (11th Cir. 1986) .................................................*passim*

*United States v. Coia*,
     719 F.2d 1120 (11th Cir. 1983) ........................................................ 25

*United States v. Corbin*,
     734 F.2d 643 (11th Cir. 1984) .......................................................... 26

*United States v. Curry*,
     760 F.2d 1079 (11th Cir. 1985) .......................................................... 1

*United States v. Edwards*,
     777 F.2d 644 (11th Cir. 1985) ...................................................*passim*

*United States v. Ewell*,
     383 U.S. 116 (1966) ......................................................................... 16

*United States v. Friedman*,
     649 F.2d 199 (3d Cir. 1981) ............................................................. 18

*United States v. Gilbert*,
    136 F.3d 1451 (11th Cir. 1998)......................................................... 15

*United States v. Hance*,
    501 F.3d 900 (8th Cir. 2007) .......................................................... 21

*United States v. Italiano*,
    894 F.2d 1280 (11th Cir. 1990)............................................... *passim*

*United States v. Jimenez Recio*,
    537 U.S. 270 (2003) ...................................................................... 27

*United States v. Knowles*,
    66 F.3d 1146 (11th Cir. 1995)......................................................... 25

*United States v. Lopez-Giraldo*,
    2021 WL 351985 (N.D. Ga. Feb. 2, 2021) ....................................... 21

*United States v. Madden*,
    733 F.3d 1314 (11th Cir. 2013)....................................................... 22

*United States v. O'Bryant*,
    998 F.2d 21 (1st Cir. 1993) ....................................................... 16, 21

*United States v. Ojedokun*,
    16 F.4th 1091 (4th Cir. 2021) ........................................................ 30

*United States v. O'Neill*,
    463 F. Supp. 1205 (E.D. Pa. 1979) ................................................ 18

*United States v. Pacheco-Romero*,
    2023 WL 3736877 (11th Cir. May 31, 2023) ................................... 30

*United States v. Phillips*,
    843 F.2d 438 (11th Cir. 1988)................................................... 12, 15

*United States v. Ratcliff*,
    245 F.3d 1246 (11th Cir. 2001)............................................... *passim*

*United States v. Reynolds*,
    511 F.2d 603 (5th Cir. 1975) ............................................................. 27

*United States v. Rojas*,
    718 F.3d 1317 (11th Cir. 2013) ......................................................... 12

*United States v. Rutkoske*,
    506 F.3d 170 (2d Cir. 2007) .............................................................. 30

*United States v. Williams*,
    274 F.3d 1079 (6th Cir. 2001) ........................................................... 27

## Statutes

18 U.S.C. § 3231 ........................................................................................ 1

18 U.S.C. § 3282 ........................................................................... 12, 16, 19

18 U.S.C. § 3288 ...................................................................................... 18

21 U.S.C. § 959 ................................................................................. 5, 6, 11

21 U.S.C. § 963 ............................................................................... *passim*

28 U.S.C. § 1291 ........................................................................................ 1

46 U.S.C. § 70501 ...................................................................................... 4

# STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction over this cause, pursuant to

18 U.S.C. § 3231.  The district court entered final judgment against Defendant-

Appellant on March 2, 2023.  On March 3, 2023, Defendant-Appellant filed his

notice of appeal.  This Court therefore has jurisdiction over this appeal pursuant to

28 U.S.C. § 1291.  *See United States v. Curry*, 760 F.2d 1079 (11th Cir. 1985).

## STATEMENT OF THE ISSUE

1.     Whether, for purposes of evaluating Defendant-Appellant's motion to dismiss the second superseding indictment (SSI) for violating the statute of limitations, the district court erred by not considering whether the SSI—which expanded the charged conspiracy by over five years—"broadened or substantially amended" the first superseding indictment, as required by *United States v. Ratcliff*, 245 F.3d 1246 (11th Cir. 2001)?

# STATEMENT OF THE CASE

## I.     Factual Background

### A.     The *Manatee* Is Loaded With Cocaine And Seized, And An Indictment Is Issued

This case arises out of the interdiction of a fishing vessel—the *Manatee*—on April 18, 2013 by the United States Coast Guard.  The seizure occurred about 115 miles northeast of the town of Colon, Panama, in international waters.  The *Manatee* contained about forty-three (43) bales of cocaine and weighed around 1,200 kilograms.

Defendant-Appellant, Rafael Segundo Castro Diaz, was charged and convicted in connection with this April 2013 seizure of the *Manatee*.  Castro Diaz was accused of helping to load the *Manatee* with cocaine before the *Manatee* took sail.  The government claimed that Castro Diaz traveled by fishing boat to a coastal residence in Colombia; once there, Castro Diaz helped load cocaine onto the fishing boat he took to the coastal town in Columbia.  The government next says that Castro Diaz helped transport the fishing boat (with the cocaine) out to sea where the fishing vessel met up with the *Manatee*; Castro Diaz then helped move the cocaine from that fishing boat to *Manatee*.  As discussed below, the government has since stipulated that Castro Diaz's involvement was limited to this single transfer of cocaine to the *Manatee* in April 2013.

The *Manatee* departed Colombia, with the cocaine on board, on April 17, 2013.  Evidently, the plan had been for the *Manatee* to rendezvous with a go-fast vessel off the coast of Panama and for those on the *Manatee* to then transfer the cocaine bales to a go-fast vessel.  However, the USCG intercepted the *Manatee* on April 18, while en route to Panama.

Law enforcement had learned of the vessel through Colombian wire intercepts and through confidential informants. Once on board the vessel, the USCG found three men.  These men were transported to the United States, and prosecuted in the case captioned *United States v. Jegge et al.*, No. 13-cr-20330-CR-JIC ("*Jegge* Case"), filed in the Southern District of Florida on April 29, 2013. The prosecution charged the three individuals with violating 46 U.S.C. §70501 *et seq.*, the Maritime Drug Law Enforcement Act ("MDLEA"), for transporting more than five kilograms of cocaine on the *Manatee*.  The *Jegge* indictment did not allege that the cocaine on board the *Manatee* was to be imported into the United States.  Rather, the only two counts in the *Jegge* indictment charged the MDLEA crimes of conspiracy to possess cocaine while on board a United States vessel and a related substantive charge.  Castro Diaz was not charged for any crime in the *Jegge* Case.

### B.    The Government Files A Series Of New Indictments In The Instant Case

*Original Indictment*. Years later, on December 15, 2017, the government filed the original indictment in this criminal case ("Original Indictment"). Dkt. 3.[1] The Original Indictment charged co-defendant Santiago Alirio Gomez Rivera ("Gomez") on a single count—conspiracy to import cocaine into the United States—in violation of 21 U.S.C. § 959(a) and 21 U.S.C. § 963. There were no other individuals named in the Original Indictment. The Original Indictment alleged that a criminal conspiracy began "on or about March 1, 2013 and continued until on or about May 20, 2013," and that the conspiracy occurred "in the countries of Colombia, Honduras, and elsewhere." Dkt. 3. The Original Indictment began the instant criminal proceeding.

*Superseding Indictment*. On April 19, 2018, the Government filed a first superseding indictment ("FSI") in this case. Castro Diaz was charged in the FSI, along with three other individuals (in addition to Gomez). As in the Original Indictment, the FSI alleged a single crime, conspiracy to import cocaine into the United States, in violation of 21 U.S.C. § 959(a) and § 21 U.S.C. 963. The conspiracy was alleged to have occurred "[b]eginning in or around March 2013,

---

[1] "Dkt." refers to the electronic docket entry on the district court docket.

and continuing until in or around May 2013 . . . in the countries of Colombia, Honduras, and elsewhere." The FSI is otherwise perfunctory and does not allege any specific facts to support commission of the single crime charged.

***Second Superseding Indictment***. A few months later, on July 20, 2018, the government filed a second superseding indictment ("SSI"). Dkt. 11. The SSI is the operative indictment in this case, and the relevant indictment on this appeal.

The SSI contained the same substantive charges as the Original Indictment and the FSI (violations of 21 U.S.C. § 959(a) and § 21 U.S.C. 963), and added a sixth defendant, Juan Diego Restrepo Cadavid. That said, and of critical importance here, the SSI greatly expanded the period for the conspiracy. The FSI had described a conspiracy running from "March 2013 . . . until on or about May 2013," but the SSI enlarged the conspiracy ***five years backwards*** and four months forwards. Thus, the SSI alleged a conspiracy from "January <u>2008</u> . . . until in or around <u>September</u> 2013" (emphases added).

## II.  Procedural History

### A.  The Court Denies Castro Diaz's Motion To Dismiss The SSI

On August 1, 2022, Castro Diaz moved to dismiss the SSI. Dkt. 41 ("Motion"). The main argument raised by Castro Diaz concerned the SSI's compliance with the federal statute of limitations applicable to the charged crime. Section 3282 of Title 18 provides that "no person shall be prosecuted for a non-

capital offense unless the indictment is found . . . within five years next after such offense shall have been committed."  Castro Diaz argued that the SSI tripped this five-year limitations period, because his involvement in the conspiracy ended no later than May 2013, as described in the FSI, and therefore the SSI—filed on July 19, 2018—was out of time.  Accordingly, the SSI needed to satisfy this Court's decision in *United States v. Ratcliff*, 245 F.3d 1246 (11th Cir. 2001), which provides that out-of-time indictments may only proceed if the out-of-time indictment "does not broaden or substantially amend" the prior, in-time indictment. *Id*. at 1253.

Co-defendants Sayas and Cadavid joined that motion.  Dkts. 42, 45, 71. Defendant Gomez filed a separate motion to dismiss, making similar arguments. Dkt. 56.  The Motion was referred to Magistrate Judge McAliley.

On November 15, 2022, Judge McAliley heard argument on the Motion. And a week later, Judge McAliley issued a report & recommendation ("R&R") on the Motion, recommending that the district court deny it in full.  Judge McAliley reasoned that the SSI was timely, and therefore concluded that the court did not need to decide whether the SSI—which extended the conspiracy by five years going backwards, and six months going forward—broadened or substantially altered the FSI.  Judge McAliley denied the Motion on this basis.

Even so, Judge McAliley expressly noted that this conclusion could change depending on the facts ultimately proved at trial, and that therefore the denial "may not be the last consideration of the statute of limitations." Dkt. 78 at 14. Judge McAliley adverted that "[i]f the record at trial supports any particular Defendant's claim that his criminal conduct ended more than five years before the Second Superseding Indictment was filed," then the conclusion of whether the SSI complied with the five-year time bar in § 3282 could change. *Id*.

Castro Diaz timely objected to Judge McAliley's R&R, on the basis that it erred in its reading of *Ratcliff*, and that such an outcome pushes against constitutional concerns embodied in vagueness doctrines. Dkt. 87. Judge Moore, the judge whom this Court reversed in the *Ratcliff* case, overruled these objections, adopted the R&R, and denied the motion to dismiss. Dkt. 97 at 5.

Specifically, the district court held that there was no legal error in Judge McAliley's failure to consider whether the SSI broadened or substantially altered the FSI. And the district court stated that although Castro Diaz claimed that "his involvement in the conspiracy concluded on April 18, 2013," the court found this detail irrelevant because "the Government filed the SSI by paper ***on April 17, 2018***, within the statute of limitations" (emphasis added).

That statement and conclusion is contradicted by the documentary record. As shown below, the SSI is dated and stamped July 19, 2018. And the Government itself has conceded that "[t]he Second Superseding Indictment was . . . filed on July 19, 2018."  Dkt. 48 at 2:



## B.  The Government Stipulates To Castro Diaz's Conduct And He Is Found Guilty

After the denial of the Motion, Castro Diaz sought to preserve his appellate rights with respect to arguments raised in the Motion, and therefore (among other reasons) did not plead guilty.  Instead, the Government and Castro Diaz stipulated to the following set of facts:

➢ His "role in the charged conspiracy was to help co-conspirators regarding an April 2013 transport of 1,200 kilos of cocaine";

➢ He "helped to transport" those bales from a residence in Colombia to the *Manatee*, and this "occurred in April 2013"; and

➢ The *Manatee* was seized in April 2013.

The Government and Castro Diaz also agreed that Castro Diaz preserved his right to appeal the district court's decision on the Motion.

Separately, Castro Diaz waived his right to a jury trial and right to testify. Dkts. 110, 111. As a result of these agreed-upon facts, and with those waivers in place, Judge Moore found Castro Diaz guilty at a short bench trial conducted on December 20, 2022. As the transcript of that bench trial makes clear, the conspiracy that Castro Diaz stipulated to ended in or around April 2013:

> THE COURT: Do you agree, Mr. Diaz, that you were part of the conspiracy regarding importing between April 2013, or around April 2013, with transporting 1200 kilos of cocaine into the United States?

> DEFENDANT DIAZ: Yes, your Honor.

This diverged from the bench trial of co-defendant Rivera, which took place at the same hearing. As the district court made clear, co-defendant Rivera agreed to a set of facts that described his conspiracy as running through September 2013, unlike Castro Diaz's April-2013 conspiracy:

THE COURT: And that is that beginning in or around January 28th and continuing until on or around September 13th, September of 2013, that you and others conspired to facilitate the accusation, protection and transportation of multiple – thousand kilograms of cocaine for the purpose of importing said cocaine into the United States; is that correct?

DEFENDANT RIVERA: Yes, your Honor.

## C.    Castro Diaz Is Sentenced And Appeals

On March 2, 2023, the Court entered judgment against Castro Diaz, finding him guilty on Count I of the SSI—the conspiracy to distribute cocaine knowing that it would be imported into the United States, under 21 U.S.C. §§ 959 and 963. Dkt. 157.

The Court sentenced Castro Diaz to 70-months' imprisonment. As noted at the sentencing hearing, Castro Diaz "was a person whose involvement involved one particular day in 2013, April 2013" (Dkt. 195 (Sentencing Tr.) at 7:6-8), and that besides that "[o]ne time, [in] April 2013, among those five years, there's no other allegation or proof that Mr. Diaz did anything." (*id.* at 12:24-25).

As Castro Diaz stated on the record at sentencing:

I would like to apologize for this error. I'd like to apologize to the Court, to the U.S. Attorney. I know that what I did was wrong, but I am also human, and I would like to say that I deserve a second chance. I am a father to three girls, but I now only have two of them left because three months ago, I lost one. I ask you wholeheartedly, from the bottom of my heart, for a second opportunity, a second chance to go back to my family and take care of them[.]

11

*Id.* at 9:17-25.  Before the conclusion of the hearing, Castro Diaz's trial counsel expressly reserved his appellate rights with respect to the district court's adverse decision on the Motion.  *Id.* at 20:14-21.

Castro Diaz timely filed a notice of appeal to this Court on March 3, 2023. Dkt. 159.

## STANDARD OF REVIEW

This Court "review[s] the district court's denial of a motion to dismiss an indictment for abuse of discretion, but the interpretation and application of a statute of limitations is a legal question that [is] review[ed] *de novo*."  *United States v. Rojas*, 718 F.3d 1317, 1319 (11th Cir. 2013).

## SUMMARY OF ARGUMENT

The district court declined to assess whether the SSI "broadened or substantially amended" the FSI, as required by this Court's decision in *United States v. Ratcliff*, 245 F.3d 1246 (11th Cir. 2001).  That is reversible error.

**I.**  Criminal statutes of limitations are to be liberally interpreted in favor of repose.  *See United States v. Phillips*, 843 F.2d 438, 443 (11th Cir. 1988).

The applicable statutes of limitations in this appeal, 18 U.S.C. § 3282, provides that certain crimes must be tried within five years of the alleged commission.  In *United States v. Edwards*, 777 F.2d 644 (11th Cir. 1985), this Court assessed whether a superseding indictment "impermissibly . . . broaden[ed]

12

and substantially amend[ed] the charges made in the original indictment." *Id.* at 649. Critically, this Court applied the broaden-or-substantially-amend test to the superseding indictment in *Edwards* even though "the added charges were timely brought in the superseding indictment." *Id.* at 649–50. *Ratcliff* did not purport to overturn this aspect of *Edwards*.

The district court erred by misapplying the teaching of *Edwards* and *Ratcliff*. According to the district court, any need to assess whether the SSI "alleged a conspiracy that 'materially broadened and substantially amended'" the FSI was "not necessary because the SSI was timely filed[.]" Dkt. 97 at 5. But this reasoning flatly contradicts *Edwards*. The district court's ruling thus cannot stand.

**II.**     Alternatively, even if the district court were correct to assess timeliness of the SSI first, it plainly erred in finding that the SSI was timely, and should have conducted the broaden-or-substantially-amend test from *Ratcliff* anyway. It is blackletter law that for conspiracies charged under § 963, "the indictment satisfies the requirements of the statute of limitations if the government alleges and proves, at trial or pretrial, that the conspiracy continued into the limitations period." *United States v. Butler*, 792 F.2d 1528, 1532 (11th Cir. 1986).

Here, however, the government stipulated that Castro Diaz's involvement in the conspiracy ended, at the latest, by April 2013. Indeed, the government agreed

that Castro Diaz's "role" was to "help co-conspirators  regarding an April 2013 transport of 1,200 kilos of cocaine" via the *Manatee*.  Dkt. 109 at 1.

As a matter of law, the conspiracy charged as to Castro Diaz therefore terminated no later than April 2013—when the USCG seized the *Manatee*.  *See Butler*, 792 F.2d at 1531.  Indeed, in *Ratcliff*, this Court focused on defendant Ratcliff's proven criminal activity—and not that of his co-conspirators—in assessing when the statute of limitations clock began to run.  245 F.3d at 1252 ("Ratcliff's proven criminal activity ended, at the latest, by April of 1993.").

Because the limitations period began, at latest, in April 2013, the SSI was necessarily untimely, and, even under the district court's erroneous application of *Edwards* and *Ratcliff*, it needed to assess whether the SSI materially changed the FSI.  The district court did not.  Instead, it said that even if Castro Diaz's "involvement in the conspiracy concluded on April 18, 2013" the SSI was timely because "the Government filed the SSI by paper on April 17, 2018, within the statute of limitations[.]"  Dkt. 97 at 6.  This was plain error; as the Government concedes, it was filed on July 19, 2018, after the limitations period lapsed.

**III.**    This Court should reverse the district court's denial and remand with instructions to dismiss the SSI.  The SSI plainly broadened or substantially amended the FSI—it wound the conspiracy back in time by over five years.  There

is no need to remand to the district court to make this obvious finding.

Alternatively, this Court could vacate and remand to the district court to apply

*Ratcliff*'s broaden-or-substantially-amend test in the first instance.

## ARGUMENT

## I.   The District Court Had To Analyze Whether The SSI Broadened Or Substantially Amended The FSI

The magistrate judge held that there was no need to assess whether the SSI

broadened or substantially amended the FSI simply because the SSI appeared to

have been timely filed.  Dkt. 78 at 13.  Castro Diaz objected to the R&R because

this constituted legal error (Dkt. 87 at 7-20); the district court overruled this

objection (Dkt. 97 at 5).  The failure to assess whether the SSI broadened the FSI,

however, violated this Court's line of decisions which explain that courts must

undertake this analysis whether or not a superseding indictment is timely filed.

### A.   *Edwards*, *Italiano*, and *Ratcliff*

**1.** "Statutes of limitations, both criminal and civil, are to be liberally

interpreted in favor of repose."  *United States v. Phillips*, 843 F.2d 438, 443 (11th

Cir. 1988).  Relatedly, "[w]hen doubt exists about the statute of limitations in a

criminal case, the limitations period should be construed in favor of the

defendant."  *United States v. Gilbert*, 136 F.3d 1451, 1454 (11th Cir. 1998).

These background principles of interpretation are grounded in several longstanding considerations. A statute of limitations is "designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Toussie v. United States*, 397 U.S. 112, 114–15 (1970). It also "ha[s] the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." *Id*. Thus, in this sense, the policies underlying statutes of limitations are "grounded in concepts of due process." *United States v. O'Bryant*, 998 F.2d 21, 24 (1st Cir.1993). It is for these reasons, and others, that criminal statute of limitations have long been interpreted in favor of defendants, for the statute of limitations is "considered the primary guarantee against bringing overly stale criminal charges." *United States v. Ewell*, 383 U.S. 116, 122 (1966).

**2.** In a trilogy of cases culminating in *Ratcliff*, this Court applied these fundamental principles of interpretation to 18 U.S.C. § 3282—which is the catch-all federal statute of limitations and the operative one on this appeal—and provides that certain crimes must be tried within five years of its commission.

In *United States v. Edwards*, 777 F.2d 644 (11th Cir. 1985), defendants were charged and convicted with drug distribution charges, including conspiracy under

16

21 U.S.C. § 963 (as is the case here).  Two indictments were filed in *Edwards*.

The first indictment was filed on March 2, 1984, and was timely—it was filed

"four days . . . before the five-year deadline expired on the drug charges."  *Id*. at

647.  The government then filed a superseding indictment twenty days later; this

indictment reiterated the drugs charges and added additional and "numerous tax-

related counts."  *Id*. at 646.  These new, tax-related charges were timely—as this

Court noted, the government has a six-year statute of limitations for tax crimes.  *Id*.

at 647.  The defendants in *Edwards* challenged the superseding indictment because

it "impermissibly . . . broaden[ed] and substantially amend[ed] the charges made in

the original indictment."  *Id*. at 649.  In a critical passage, this Court rejected that

argument—but <u>not</u> because the superseding indictment was timely filed as to the

tax charges (contrary to the district court's ruling below).  Instead, the Court

rejected the appeal because the tax charges did not impermissibly broaden or

amend the original charges:

> The tax charges against the defendants added in Counts V through XI
> are subject to a six-year statute of limitations ***and were timely brought***
> in the superseding indictment.  These added charges did not
> improperly broaden or amend the original charges . . . . The
> superseding indictment is, therefore, entirely appropriate; the charges
> therein should not be dismissed.

*Id*. at 649–50 (emphasis added).  In so holding, the *Edwards* court cited a string of

cases that analyzed whether charges brought in a subsequent indictment broadened

or otherwise substantially expanded the counts from the original charge. *See id.* (citing, *inter alia*, *United States v. Friedman*, 649 F.2d 199, 204 (3d Cir.1981) (substantial alteration of the charges); *United States v. O'Neill*, 463 F. Supp. 1205, 1207 (E.D. Pa. 1979) (substantial amendment of the original indictment).

*United States v. Italiano*, 894 F.2d 1280 (11th Cir. 1990), decided a few years after *Edwards*, reaffirmed this holding and reasoning. In *Italiano*, the primary issue concerned whether a superseding indictment, returned after the underlying indictment had been dismissed, was timely filed under 18 U.S.C. § 3288, which governs whether follow-on indictments are timely if an existing indictment is dismissed for legal defect. Citing *Edwards*, this Court applied the same rule and held that § 3288 required a showing that the superseding indictment did not "broad[en] or substantially amend the original charges." *Id.* at 1283. After comparing the indictments and conducting this analysis, this Court held that the superseding indictment did not impermissibly expand the prior one.

Finally, Judge Carnes' decision for the Court in *Ratcliff* developed and applied the *Edwards* and *Italiano* principles. In *Ratcliff*, the defendants were charged in the first indictment with a conspiracy—"[b]eginning in or about late 1992, and continuing through April 1993"—to "import marijuana (Count I), and to possess marijuana with the intent to distribute it (Count II)." 245 F.3d at 1248. As

18

this Court explained, the superseding indictment as to Counts I and II "no longer charged the defendants with two conspiracies occurring in 1992 and 1993," but instead charged Ratcliff with two conspiracies "[b]eginning in 1980 and continuing *through 1993*." *Id*. (emphasis added). This second indictment was handed down in August 1998. Therefore, Ratcliff moved to dismiss the superseding indictment under § 3282, arguing it was untimely.

This Court began by noting that the parties "agree[d] that Ratcliff's proven criminal activity ended, at the latest, by April of 1993[.]" *Id*. at 1252. Therefore, the superseding indictment, issued in August 1998, was not timely. Citing *Edwards* and *Italiano*, this Court then explained that, "[g]iven our precedent, the result in this case turns on whether the superseding indictment against Ratcliff 'broadened or substantially amended the original charges.'" *Id*. at 1253 (citing *Italiano*, 894 F.2d at 1282).

And the application of that rule was straightforward in *Ratcliff*; the "most obvious difference, and the primary one appearing on the face of the indictments, [wa]s the change in the time period of the alleged conspiracies"—an expansion of twelve years. *Id*. *Ratcliff* was thus "one of those frustrating cases in which an indictment charged a defendant with serious crimes which, for the most part, he admits having committed, but for which he cannot be punished in light of our

holding" because "it would be more regrettable if we failed to follow the law and permitted Ratcliff to be punished for conspiracies charged against him in an indictment returned outside of the statute of limitations period." *Id.* at 1256.

**B.** **The District Court Erred In Its Application Of *Edwards*, *Italiano*, And *Ratcliff***

The district court premised its holding on a fundamental misunderstanding of *Ratcliff* and its predecessors. According to the district court, any need to assess whether the SSI "alleged a conspiracy that 'materially broadened and substantially amended'" the FSI was "not necessary because the SSI was timely filed[.]" Dkt. 97 at 5.

This reasoning gainsays *Edwards*. As explained, *Edwards* recognized that the superseding indictment in that case was ***timely filed***; nonetheless, this Court assessed whether the additional, tax-related charges brought in the superseding indictment "improperly broaden[ed] or amend[ed] the original charges." 777 F.2d at 649 ("The tax charges against the defendants added in Counts V through XI are subject to a six-year statute of limitations and were timely brought in the superseding indictment. These added charges did not improperly broaden or amend the original charges[.]"). Put differently, the district court's conditional test—that it only needed to do a broadening analysis "if" (Dkt. 97 at 5) the SSI was untimely—is wrong as a legal matter under *Edwards*.

Further, *Ratcliff* can be understood as consistent with this understanding of *Edwards*. Although the court below discerned a "two-step test" from *Ratcliff*—requiring a showing of untimeliness before assessing broadening—the *Ratcliff* court announced no such test. Indeed, *Ratcliff* relied on a First Circuit case, *United States v. O'Bryant*, which it cited *three times* in the opinion—and *O'Bryant* disclaimed the sort of conditional test that the court below adopted. 998 F.2d 21, 25 n.3 (1st Cir. 1993) ("[W]e rule that the superseding indictment was not time-barred even if O'Bryant's active participation in the conspiracy ended in 1985, as he claims[.]").

Moreover, affirming the conditional, two-step holding detailed below would risk creating a split with other courts of appeals, which do not adhere to this conditional framework. *See, e.g.*, *United States v. Hance*, 501 F.3d 900, 905 (8th Cir. 2007) ("[A] superseding indictment filed while the original indictment is validly pending relates back to the time of filing of the original indictment if it does not substantially broaden or amend the original charges." (internal quotation marks omitted)). And lower courts have understood *Ratcliff* to be concerned with backwards-looking expansions to conspiracy charges, which is the situation here. *United States v. Lopez-Giraldo*, 2021 WL 351985, at *3 (N.D. Ga. Feb. 2, 2021)

("The only way the United States could charge the old conduct was by expanding its existing charge.").

Finally, "[w]hen [this Court] ha[s] conflicting case law, [it] follow[s] [its] oldest precedent"—so if there is any conflict between *Ratcliff* and *Edwards*, the Court should adhere to the earlier-in-time precedent, *i.e.*, *Edwards*. *United States v. Madden*, 733 F.3d 1314, 1319 (11th Cir. 2013).

## II. In Any Event, The SSI Was Plainly Untimely

Alternatively, the district court erred as a legal matter because, even if *Ratcliff* and *Edwards* announced a "two-step" test, the SSI was plainly untimely.

### A. Non-Overt-Act Conspiracies Require Proof That The Conspiracy Continued Into The Limitations Period

As noted, the Government charged Castro Diaz with a conspiracy to distribute drugs under 21 U.S.C. § 963. Section 963 is a non-overt-act conspiracy statute, meaning "the government is not required to allege an overt act in order to obtain a conviction." *United States v. Butler*, 792 F.2d 1528, 1532 (11th Cir. 1986).

Non-overt-act conspiracies pose issues for statutes of limitations, because there is no need to prove an overt act (from which a statute of limitations could run). In response to this problem, this Court has long held that, for non-overt-act conspiracies, "the indictment satisfies the requirements of the statute of limitations

if the government alleges ***and proves***, at trial or pretrial, that the conspiracy ***continued*** into the limitations period." *Butler*, 792 F.2d at 1532 (emphases added).

Thus, as *Italiano* explained, "[f]or purposes of the statute of limitations, the 'charges' in the superseding indictment are defined not simply by the statute under which the defendant is indicted, ***but also by the factual allegations that the government relies on to show a violation of the statute***." 894 F.2d at 1282 (emphasis added). That is why the magistrate judge below recognized that "[i]f the record at trial supports any particular Defendant's claim that his criminal conduct ended more than five years before the [SSI] was filed," the R&R would "not be the last consideration of the statute of limitations." Dkt. 78 at 14.

## B. The Stipulated Facts Show Castro Diaz's Involvement In The Conspiracy Ended More Than Five Years Before The SSI

Because the timeliness of the SSI is determined by reference to "the factual allegations that the government relies on to show a violation of the statute," *Italiano*, 894 F.2d at 1282, the stipulated facts here show the SSI was untimely.

**1.** In *Ratcliff*, the parties agreed that "Ratcliff's proven criminal activity ended, at the latest, by April of 1993." 245 F.3d at 1252. It was on this basis that the *Ratcliff* court considered that the superseding indictment was untimely and analyzed whether it broadened or amended the original charges.

This case is on all fours. Here, the government ***agreed*** that Castro Diaz's conduct and involvement definitively concluded by April 2013; the government agreed that, *inter alia*, his "role in the charged conspiracy was to help co-conspirators regarding an April 2013 transport of 1,200 kilos of cocaine"; that he "helped to transport" those bales from a residence in Columbia to the Manatee; and that this "occurred in April 2013." Dkt. 109. And these stipulated facts featured heavily in the district court's adjudication of guilt: The court asked Castro Diaz to confirm (which he did) that he was "part of the conspiracy regarding importing ***between April 2013, or around April 2013***, with transporting 1200 kilos of cocaine into the United States." Dkt. 197 (Bench Trial Tr.) at 13:16–21.

Therefore, even if the district court did not err for the reasons given above in Section I, the court necessarily still erred in not assessing whether the SSI broadened or amended the FSI, because the stipulated facts show that Castro Diaz's involvement ended, definitively, in April 2013—and therefore the SSI, returned on July 19, 2018, was beyond the five-year limitations period in § 3282.

**2.** To be sure, Castro Diaz was charged in a conspiracy with others, such as defendant Rivera, and it was stipulated that <u>Rivera's</u> involvement continued through September 2013. Even still, Rivera's actions are of no moment in assessing the timeliness of the SSI as to <u>Castro Diaz</u>, for at least two reasons.

*First*, as a matter of law, the stipulated facts prove that Castro Diaz terminated his involvement in any conspiracy by April 2103. "With respect to conspiracy statutes that do not require proof of an overt act, the indictment satisfies the requirements of the statute of limitations if the conspiracy is alleged to have continued into the limitations period." *United States v. Coia*, 719 F.2d 1120, 1124 (11th Cir. 1983). Involvement in a conspiracy terminates either when the goal of the conspiracy has been "accomplished" or the defendant has commenced a "final act in furtherance of the conspiracy." *Id*. In other words, "[a] conspiracy ends after 'the central purposes of a conspiracy have been attained.'" *United States v. Knowles*, 66 F.3d 1146, 1155 (11th Cir. 1995) (quoting *Grunewald v. United States*, 353 U.S. 391, 401–02 (1957)).

As explained, the Government agreed that Castro Diaz's "role" in the conspiracy "was to help co-conspirators regarding an April 2013 transport" of cocaine. Dkt. 109 at 1. This transport was to occur on the *Manatee*, which the USCG seized in April 2013. Under controlling law, these stipulated facts mean that the conspiracy, charged to Castro Diaz, terminated no later than April 2013.

Consider *Butler*'s holding. There, the U.S. Coast Guard seized a fishing vessel, the *Morning Star*, which contained 25,000 pounds of marijuana. *Butler*, 792 F.2d at 1531. The *Butler* defendants, as is the case here, were charged with

conspiracy to transport drugs under 21 U.S.C. § 963.  In assessing whether the

indictment in *Butler* had been timely charged, this Court stated expressly that the

conspiracy ***terminated*** upon seizure of the *Morning Star*:  "The appellants contend,

and we find that the conspiracy was terminated on July 12, 1979, the date of the

*Morning Star* seizure."  *Id.* at 1531–32.

Indeed, *Butler* compels the same conclusion—that the conspiracy charged to Castro

Diaz terminated no later than the seizure of the *Manatee*.  The stipulated facts

make no mention of any continued involvement by Castro Diaz after seizure of the

*Manatee*.  *See also United States v. Barnes*, 586 F.2d 1052, 1059 (5th Cir. 1978)

("[T]he cocaine had been confiscated, and McClure and Donna Ballard had been

arrested. The conspiracy was ended.").[2]

Indeed, that a conspiracy to import drugs into the United States terminates

upon interdiction of those drugs aligns with the proposition that final distribution

of drugs terminates a conspiracy concerning the same—and the latter statement of

law has long been accepted in this Court and others.  *See, e.g.*, *United States v.*

*Corbin*, 734 F.2d 643, 653 n.2 (11th Cir. 1984) ("[T]he crime of importing a

controlled substance is a continuing one that ends only after the contraband reaches

---

[2] This Court, sitting *en banc*, adopted as binding precedent all decisions by
the former Fifth Circuit rendered prior to October 1, 1981.  *See Bonner v. City of*
*Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

its final destination in the United States[.]" (citing *United States v. Reynolds*, 511 F.2d 603 (5th Cir. 1975))); *see also, e.g.*, *United States v. Williams*, 274 F.3d 1079, 1083–84 (6th Cir. 2001) (Conspiracy and drug importation are continuous crimes; that is, they are not completed until the drugs reach their final destination" (internal quotation marks omitted)).  A contrary holding here would spawn both intra-Circuit and inter-Circuit tension, if not outright conflict.[3]

    *Second*, *Ratcliff* itself supports this reasoning.  Recall that in *Ratcliff*, the parties agreed that "***Ratcliff's*** proven criminal activity ended, at the latest, by April of 1993."  245 F.3d at 1252 (emphasis added).  *Ratcliff*, like this appeal, was a conspiracy case; still, this Court's analysis did not turn on whether the criminal activity of any other conspirators ceased by April 2013.  And that makes sense; for non-overt-act conspiracies, the government must "prove[]" that the conspiracy continued into the limitations period.  *Butler*, 792 F.2d at 1532.  The opposite is true here: the Government conceded at trial, consistent with *Butler*, that the

---

    [3] Neither the stipulation of facts concerning the scope of Castro Diaz's involvement (Dkt. 109) nor co-defendant Rivera's stipulation of facts (Dkt. 106) mention or refer to any continued conspiratorial activity after interdiction of the *Manatee*; nor is there any mention that Castro Diaz (or Rivera) were unaware that the *Manatee* had been seized.  *See United States v. Jimenez Recio*, 537 U.S. 270, 275 (2003) (noting conspiracy could continue, even after law-enforcement involvement, if¸ *inter alia*, facts showed conspirators were unaware of law-enforcement involvement).

conspiracy Castro Diaz agreed to terminated in April 2013. The SSI was therefore

untimely, and the district court needed to conduct the test required by *Ratcliff*.[4]

### C.     The District Court Clearly Erred

As to the timeliness of the SSI, the district court held that, even if it were

true that Castro Diaz's "involvement in the conspiracy concluded on April 18,

2013" (and the stipulated facts make clear that this was true), Castro Diaz would

not be entitled to relief anyway because "the Government filed the SSI by paper on

April 17, 2018, within the statute of limitations[.]"  Dkt. 97 at 6.  In other words,

the district court held that even if Castro Diaz's involvement in the conspiracy did

end in April 2013, the SSI was still timely filed.

This finding was plainly erroneous.  The SSI is dated and stamped July 19,

2018; the Government itself has conceded that "[t]he Second Superseding

Indictment was . . . filed on July 19, 2018."  Dkt. 48 at 2; *see also supra* at 9

---

[4] Castro Diaz expressly renewed his motion to dismiss the indictment at the end of the trial; the district court recognized that it had been renewed and once again denied the Motion. *See* Dkt. 197 (Bench Trial Tr.) at 12:19–13:7 ("I think I have to, just as a matter of record, renew—I do understand you did go over the fact that there was a report and recommendation and you're adopting it and ruling against the defense on the violation of statute of limitations.  I have to renew that at this bench trial at the beginning when you're doing the stipulation of the fact. And then could you deem it renewed at the end of the Government's case?  THE COURT: Okay. I will, you've renewed it at the beginning. And I know Mr. Rivera adopts the same request. And you get the same ruling that it's denied.").

(image of SSI). So it is not the case that, if Castro Diaz's "involvement in the conspiracy concluded on April 18, 2013," then the SSI was timely anyway. Dkt. 97 at 6. Rather, it was filed three months too late, requiring—even under the district court's erroneous view of the law—application of *Ratcliff*'s broaden-or-substantially-amend test.

## III.   The Court Should Reverse, Or At A Minimum, Remand

The district court should have assessed whether the SSI "broadened or substantially amended" the FSI. *Ratcliff*, 245 F.3d at 1255. The answer is plainly that the SSI did, and this Court should therefore reverse the denial of the Motion to dismiss, and vacate and remand with instructions to dismiss the SSI—precisely what this Court did in *Ratcliff*. *See id*. at 1256; *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 103 (2013) (Kennedy, J., joined by Thomas, Alito, and Sotomayor, JJ., concurring) (explaining remand "serve[s] no purpose" where "uncontested" facts make outcome "absolutely clear").

"[T]he crucial inquiry is whether approximately the same facts were used as the basis of both indictments." *Italiano*, 894 F.2d at 1285. In making this assessment, this Court has noted "[t]he most obvious difference, and the primary one . . . is the change in the time period of the alleged conspiracies." *Ratcliff*, 245 F.3d at 1253. In *Ratcliff*, a twelve-year backward expansion of time constituted a

substantial amendment.  *See id.*  The same result attaches here:  the SSI greatly expanded the charged conspiracy; it alleged a conspiracy beginning in January 2008—more than *five years* earlier than alleged in the FSI.  Dkt. 78 at 3.  The SSI therefore "dramatically altered the case against which [Castro Diaz] had to defend himself."  *Ratcliff*, 245 F.3d. at 1254.  And this expansion in the charged conspiracy distinguishes this case from others where courts of appeals have declined to find substantial amendment to a pending indictment.  *See, e.g.*, *United States v. Rutkoske*, 506 F.3d 170, 176 (2d Cir. 2007) (one-week expansion of time); *United States v. Ojedokun*, 16 F.4th 1091, 1100 (4th Cir. 2021) (superseding indictment *narrowed* scope of conspiracy).

Although the SSI broadened and substantially amended the charges brought in the FSI, to the extent this Court has any doubts, it could remand for the district court to decide this issue in the first instance.  *See, e.g.*, *United States v. Pacheco-Romero*, 2023 WL 3736877, at *2 (11th Cir. May 31, 2023) (per curiam).

## <u>CONCLUSION</u>

The Court should vacate the judgment against Castro Diaz, reverse the district court's denial of the motion to dismiss the indictment, and remand with instructions for the district court to dismiss the Second Superseding Indictment against Castro Diaz.

Respectfully submitted,

Dated:  August 29, 2023
        New York, New York

                              */s/ Brian T. Goldman*
                              Vincent Levy
                              Brian T. Goldman
                              **HOLWELL SHUSTER & GOLDBERG LLP**
                              425 Lexington Avenue
                              New York, NY 10017
                              (646) 837-5151
                              bgoldman@hsgllp.com

                              Martin A. Feigenbaum
                              P.O. Box 545960
                              Surfside, Florida 33154
                              Telephone: (305) 323-4595
                              Facsimile: (844) 274-0862
                              Email: innering@aol.com

                              *Attorneys for Defendant-Appellant*
                              *Rafael Segundo Castro Diaz*

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 27(d)(2)(A) because it contains 6,504 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Eleventh Circuit Rule 32-4.

The foregoing brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman font, using Microsoft Word 2013.


Dated: August 29, 2023                        */s/ Brian T. Goldman*
                                           Brian T. Goldman

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing brief for

Defendant-Appellant Rafael Segundo Castro Diaz was served via ECF on all

parties.

_____/s/ *Brian T. Goldman*_____
Brian T. Goldman
